<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FORMOSA PLASTICS CORPORATION, U.S.A., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ACE AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:20-cv-14338 (BRM) (JSA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Plaintiff Formosa Plastics Corp., U.S.A.'s ("Formosa") and Defendant ACE American Insurance Company's ("ACE") respective Motions *in Limine* filed on September 2, 2025. Formosa requests: (1) exclusion of any evidence or testimony concerning any plastic discharges after March 24, 2019 (ECF No. 139), (2) exclusion of Steven Levine's ("Levine") expert testimony (ECF No. 141), (3) partial exclusion of the expert testimony of Guy Vaillancourt ("Vaillancourt") (ECF No. 142), (4) exclusion of evidence of attorney posturing and mediation communications (ECF No. 143), and (5) exclusion of evidence concerning the reasonableness of Formosa's settlement in the underlying litigation (the "*Waterkeeper* Litigation") (ECF No. 144). On September 30, 2025, ACE filed five oppositions. (ECF Nos. 153, 154, 155, 156, 157.) Formosa filed replies in support of its Motions *in Limine* on October 7, 2025. (ECF Nos. 162, 163, 164, 165, 166.)

Also before the Court are ACE's Motions *in Limine* requesting: (1) exclusion of the expert testimony of Jeffrey M. Posner ("Posner") (ECF No. 135), (2) exclusion of the expert testimony

of Ricky M. Anderson ("Anderson") (ECF No. 136), and (3) exclusion of documents Formosa withheld on the basis of privilege (ECF No. 137). ACE also asks the Court to take judicial notice of all pleadings, deposition testimony, trial testimony, and conclusions of fact and law from the *Waterkeeper* Litigation (ECF No. 138), as well as the Matagorda Bay Mitigation Trust website's project summaries page (ECF No. 140). On September 30, 2025, Formosa filed four oppositions.[1] (ECF Nos. 148, 149, 151, 152.) ACE filed four replies in support of its Motions *in Limine* on October 7, 2025. (ECF Nos. 158, 159, 160, 161.)

Having reviewed the parties' submissions filed in connection with the motions *in limine*, and having held oral argument on December 3, 2025, and incorporating and considering those arguments herein,[2] for the reasons set forth below and for good cause having been shown, Formosa's first motion (ECF No. 139) is **GRANTED**, Formosa's second motion (ECF No. 141) is **GRANTED IN PART** and **DENIED IN PART**, Formosa's third motion (ECF No. 142) is **GRANTED**, Formosa's fourth motion (ECF No. 143) is **GRANTED**, and Formosa's fifth motion (ECF No. 144) is **DENIED**, ACE's first motion (ECF No. 135) is **GRANTED IN PART** and **DENIED IN PART**, ACE's second motion (ECF No. 136) is **GRANTED**, ACE's fourth motion (138) is **DENIED**, and ACE's fifth motion (ECF No. 140) is **DENIED**. Additionally, the Court **RESERVES** judgment on ACE's third motion. (ECF No. 137).

---

[1] With respect to ACE's Motion *in Limine* seeking to bar Formosa from introducing documents withheld on the basis of privilege of trial (ECF No. 137), Formosa filed a "response" and not an opposition, as Formosa does not intend to present said privileged documents (ECF No. 150 at 2 ("It is not clear why ACE filed a motion *in limine* to preclude Formosa from utilizing documents it has determined are privileged. This Court agreed with Formosa's privilege determination. None of those documents are on Formosa's Exhibit List attached to the Pre-Trial Order.")).

[2] With the Court's permission, ACE and Formosa both filed post-oral argument briefs. (ECF Nos. 177, 178.)

## I. BACKGROUND

### A.    Factual Background

This matter arises from an insurance coverage dispute. Formosa seeks to recover amounts incurred in defense and settlement of the *Waterkeeper* Litigation for alleged violations of the Federal Water Pollution Act, 33 U.S.C. § 1251 *et. seq.*, which Formosa claims to be covered under a Global Premises Pollution Liability Insurance Policy (the "Policy")—Policy No. GPI G24890491 001—issued by ACE for the policy period of July 1, 2010, through July 1, 2015, which was subsequently extended by an endorsement to July 1, 2019 (the "Policy Period"). (ECF No. 85-2 ¶ 1; ECF No. 86-1 ¶ 1; ECF No. 87-2 ¶ 1; ECF No. 88 ¶ 1.) Formosa alleges ACE has refused to honor its contractual coverage obligations for amounts Formosa incurred in defense and settlement of a complaint brought by the San Antonio Bay Estuarine Waterkeeper and S. Diane Wilson (collectively, "Waterkeepers") for alleged violations of the Federal Water Pollution Act (the "*Waterkeeper* Litigation"). (ECF No. 1 ¶¶ 1–2.)

#### 1. ACE Agrees to Provide Formosa with Insurance Coverage

On or around July 1, 2010, ACE issued the Policy to Formosa for the policy period of July 1, 2010, through July 1, 2015 (the "Policy Period"). (*See* ECF No. 85-2 ¶ 1; ECF No. 86-1 ¶ 1; ECF No. 87-2 ¶ 1; ECF No. 88 ¶ 1.) The Policy Period was extended by Endorsement Number 026 to July 1, 2019. (*See* ECF No. 88 ¶ 1.) Among the Policy's terms, it covered eight Formosa facilities in Texas, including the subject facility located in Point Comfort (the "Point Comfort Plant" or the "plant"). (*See* ECF No. 86-1 ¶¶ 2, 5, 12; *cf.* ECF No. 1 ¶ 13.) The Policy further included myriad terms, provisions, and exclusions (*see id.* ¶¶ 6–11), the relevant set of which are defined and described below.

3

## 2.    Relevant Definitions, Provisions, and Exclusions of the Policy

"Claim" is defined in the Policy as "the written assertion of a legal right received by the insured from a third-party, including . . . suits or other actions alleging responsibility or liability on the part of the insured for bodily injury, property damage, remediation costs arising out of pollution conditions to which this insurance applies." [3] (ECF No. 85-2 ¶ 8 (internal quotation marks omitted); ECF No. 88 ¶ 8.) "Pollution condition" is defined as the "discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater." (ECF No. 85-2 ¶ 9; ECF No. 88 ¶ 9.) The Policy defines "remediation costs" as "reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize pollution conditions to the extent required by environmental law." (ECF No. 85-5 at 13; ECF No. 86-3 at 71.) "Environmental law[]" is any "national, federal, state, provincial, commonwealth, municipal or other local laws, statutes, directive, ordinances, rules, guidance documents regulations, and all amendments thereto, including voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the insured . . . with respect to a pollution condition." (ECF No. 85-5 at 11; ECF No. 86-3 at 69.)

There are two different coverages under the Policy, Coverage A (New Pollution Conditions Coverage) and Coverage B (Pre-Existing Pollution Conditions Coverage); each applies to different time periods. (ECF No. 85-2 ¶ 2; ECF No. 88 ¶ 2.) Coverage A applies to "pollution conditions

---

[3] "Property damage" includes damages to natural resources and biodiversity. (ECF No. 85-5 at 13; ECF No. 86-3 at 71.)

that first commence[d], in their entirety, on or after the inception date [July 1, 2010]." (ECF No. 85-2 ¶¶ 5, 7 (internal quotation marks omitted); ECF No. 88 ¶¶ 5, 7.) Coverage B applies to "pollution conditions that first commenced, in whole or in part, prior to the inception date [July 1, 2010]." ECF No. 85-2 ¶¶ 6–7 (internal quotation marks omitted); ECF No. 88 ¶¶ 6–7.) The Policy provides the following coverage for new and pre-existing "pollution conditions":

> Claims, remediation costs, and associated legal defense expenses, in excess of the self-insured retention, arising out of a pollution condition on, at, under, or migrating from a covered location, provided the claim is first made, or the insured first discovers such pollution condition during the policy period.

(ECF No. 85-2 ¶ 4 (internal quotation marks omitted); ECF No. 88 ¶ 4.)

Elsewhere, the Policy's Intentional Non-Compliance Exclusion bars coverage for:

> claims, remediation costs, foreign subsidiary loss or legal defense expenses arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or executive, judicial or administrative order by any responsible person.

(ECF No. 85-2 ¶ 11 (internal quotation marks omitted); ECF No. 88 ¶ 11.) Another relevant exclusion, the Policy's Known Conditions Exclusion, excludes coverage for: "claims, remediation costs, foreign subsidiary loss or associated legal defense expenses, arising out of or related to pollution conditions in existence prior to the policy period and reported to a responsible person but not specifically referenced or identified in documents . . . attached to [the] Policy." (ECF No. 85-2 ¶ 12 (internal quotation marks omitted); ECF No. 88 ¶ 12.)

Section III.A of the Policy states ACE "shall have the right and the duty to defend the insured against a claim to which this insurance applies. [ACE] shall have no duty to defend the insured against any claim to which this insurance shall not apply." (ECF No. 85-2 ¶ 14 (internal

quotation marks omitted); ECF No. 88 ¶ 14.) Section III.B provides ACE "shall have the right to select legal counsel to represent the insured for the investigation, adjustment, and defense of any claims covered under this Policy" and "[l]egal defense expenses incurred prior to the selection of legal counsel by [ACE] shall not be covered under [the] Policy." (ECF No. 85-2 ¶ 15 (internal quotation marks omitted); ECF No. 88 ¶ 15.) Section VII.B of the Policy provides, in relevant part, Formosa must: "[i]mmediately send [ACE] copies of any demands, notices, summonses or legal papers received in connection with any claim"; "[c]ooperate with [ACE] in the investigation, settlement, or defense of the claim"; and "[p]rovide [ACE] with such information and cooperation as it may reasonably require." (ECF No. 85-2 ¶ 16 (internal quotation marks omitted); ECF No. 88 ¶ 16.) Section VII.C of the Policy (the "Consent-to-Settle Clause") provides Formosa "shall [not] make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim . . . without the written consent of [ACE]." (ECF No. 85-2 ¶ 17.)

### 3. The Point Comfort Plant

Formosa's Point Comfort Plant encompasses approximately 1,600 acres in Point Comfort, Texas. (*See* ECF No. 88-1 ¶ 1; *see also* ECF No. 86-1 ¶ 4.) The Plant had "thirteen different production units" for "manufacturing plastic resins." (ECF No. 88-1 ¶ 1.) Via a permit issued by the Texas Commission for Environmental Quality ("TCEQ"), Formosa was authorized to discharge "stormwater and wastewater from the Plant . . . into nearby Cox Creek and Lavaca Bay." (ECF No. 88-1 ¶¶ 2–3.) Because the permit required "there shall be no discharge of floating solids . . . in other than trace amounts" (*id.* ¶ 3), Formosa "had various systems and procedures in place to recover plastic . . . pellets from its stormwater and wastewater systems and prevent them from escaping the [p]lant" (*id.* ¶ 6). "Since at least 1993," the Plant was "subject to regular inspections by state and federal officials" to ensure compliance with the permit. (*See id.* ¶¶ 2, 8.) In June 2010,

6

the Environmental Protection Agency ("EPA") conducted a multi-day inspection of the Point Comfort Plant. (*See id.* ¶ 9.) On October 15, 2010, Formosa was sent a written report by the TCEQ and EPA, which summarized their findings. (*Id.* ¶ 9.) The report did not allege Formosa was discharging more than trace amounts of plastic in violation of its permit. (*See id.* ¶ 10.)

### a.    The Waterkeeper Litigation

On July 31, 2017, the Waterkeepers filed the underlying complaint against Formosa in the United States District Court for the Southern District of Texas in the case captioned *San Antonio Bay Estuarine Waterkeeper v. Formosa Plastics Corp.*, *Texas*, Civ. A. No. 17-047, 2019 WL 2716544 (S.D. Tex. June 27, 2019), *rev'd and remanded sub nom.*, 852 F. App'x 816 (5th Cir. 2021). (ECF No. 86-2 ¶ 12; ECF No. 87-2 ¶ 12.) The *Waterkeeper* Plaintiffs sought the following "relief in the form of a judicial order: (i) for prospective injunctive relief to prevent plastic discharges, (ii) requiring Formosa to take specific action to remediate past environmental harm, (iii) awarding civil penalties pursuant to the Clean Water Act [("CWA")], and (iv) awarding litigation costs and attorneys' fees." (ECF No. 86-1 ¶ 13; ECF No. 87-2 ¶ 13.)

On August 11, 2017, within seven days of being served with the underlying *Waterkeeper* complaint, Formosa reported the *Waterkeeper* Litigation to ACE, as a claim under the policy, and informed ACE it had retained Kelly Hart & Hallman LLP ("Kelly Hart") to represent them. (*See id.* ¶ 14.) On October 30, 2017, ACE sent a letter to Formosa wherein it agreed to provide Formosa a defense in the *Waterkeeper* Litigation subject to a reservation of rights and consented to Formosa's retention of Kelly Hart. (*See id.*; *cf.* ECF No. 1 ¶¶ 54–55; Countercl. (ECF No. 24) ¶ 29.)

On September 26, 2018, Formosa and Waterkeepers participated in an unsuccessful, full-day mediation, which ACE was not made aware of until October 2018. (ECF No. 86-1 ¶ 15; *cf.*

ECF No. 1 ¶¶ 57–58; ECF No. 24 ¶¶ 36–38.) The *Waterkeeper* Litigation proceeded to a one-week liability bench trial that commenced on or about March 25, 2019. (*See* ECF No. 24 ¶ 40; ECF No. 86-1 ¶ 22.) The parties dispute when ACE was first made aware of the liability trial. However, ACE asserts it did not know of the liability trial until on or around April 30, 2019 (*see* ECF No. 85-2 ¶ 51), and Formosa has not submitted any record to the Court suggesting ACE was notified prior to April 30, 2019 (*see* ECF No. 86-1 ¶ 25 (indicating Formosa notified ACE on May 29, 2019).)

On June 27, 2019, the *Waterkeeper* Court issued a memorandum and order finding Formosa liable for violations of the CWA. (ECF No. 86-1 ¶ 26.) In August 2019, Formosa retained Holland & Knight, LLP ("H&K") to serve as settlement counsel while Kelly Hart focused on the upcoming penalty trial. (*Cf. id.* ¶¶ 28–29.) On October 9, 2019, Formosa advised ACE it had retained H&K to pursue possible settlement with the *Waterkeeper* Plaintiffs. (*See* ECF No. 85-2 ¶ 61; *cf.* ECF No. 1 ¶ 74; ECF No. 24 ¶¶ 52–53.) On October 15, 2019, Formosa advised ACE of the settlement. (*See* ECF No. 86-1 ¶ 32.) ACE, however, claims Formosa settled the *Waterkeeper* Litigation without its knowledge or consent. (*Cf. id.* ¶ 39.)

#### b.    The Consent Decree

On December 6, 2019, the Southern District of Texas approved the settlement and entered a final consent decree (the "Consent Decree"). (*Id.*) The Consent Decree included all of the relief requested by the *Waterkeeper* Plaintiffs except for an award of civil penalties under the CWA. (ECF No. 86-1 ¶ 33; ECF No. 87-2 ¶ 33.) Instead, as part of the Consent Decree, Formosa agreed to contribute $50 million dollars to the Matagorda Bay Mitigation Trust (the "Matagorda Trust"), which would be used to fund environmental mitigation or other projects (the "Mitigation Projects"), and reimburse the *Waterkeeper* Plaintiffs' attorneys' fees. (*Id.*) On December 13, 2019,

ACE sent a letter formally denying coverage for the settlement of the *Waterkeeper* Litigation, any costs incurred after October 15, 2019, and any costs incurred by Formosa to retain H&K as settlement counsel. (*See* ECF No. 88-1 ¶ 44.)

### B.  Procedural History

On October 13, 2020, Formosa filed the Complaint raising a sole cause of action for breach of contract.[4] (ECF No. 1.) Between October 13, 2020, and April 30, 2021, ACE filed a series of answers.[5] (ECF No. 24.) On April 30, 2021, ACE filed the Second Amended Answer, which raised twenty affirmative defenses and five counterclaims: Declaratory Judgment—No Coverage Under Coverage A of the Policy (First Counterclaim); Breach of Contract—Section III.A of the Policy (Second Counterclaim); Breach of Contract—Section III.B of the Policy (Third Counterclaim); Breach of Contract—Section VII.B of the Policy (Fourth Counterclaim); Breach of Contract— Section VII.C of the Policy (Fifth Counterclaim). (*See generally id.*)

Fact discovery was originally scheduled to close on March 15, 2022. (ECF No. 33.) On March 1, 2022, the parties submitted a joint status letter to the Hon. Jessica S. Allen, U.S.M.J., outlining the privilege disputes and the parties' respective positions. (ECF No. 46.) In the joint letter, Formosa detailed its challenge to ACE's assertion of attorney-client communication over communications with the two law firms Formosa had retained. (*Id*. at 2.) The discovery dispute involved whether five hundred and thirty (530) documents relating to the *Waterkeeper* Litigation containing attorney-client privileged communications and/or work product should be produced.

---

[4] As previously held, the Court has subject matter jurisdiction over this matter and personal jurisdiction over ACE. *Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.*, Civ. A. No. 20-14338, 2024 WL 4891740, at *5 n.5 (D.N.J. Nov. 25, 2024). Moreover, venue is proper in this Court under 28 U.S.C. § 1391. *Id.*

[5] ACE filed a Motion for Leave to File a Third Amended Answer and Counterclaims (ECF No. 39), which the Court denied by Order dated May 17, 2022 (ECF No. 50).

(ECF No. 61 at 19.) Additionally, ACE sought to compel the production of one document withheld based on the mediation privilege. (*Id*. at 19–20.)

On June 8, 2023, Judge Allen issued an Opinion and Order denying ACE's Motion to Compel discovery based on the common interest doctrine, "at issue" doctrine, and fairness grounds. (ECF Nos. 61, 62.) On June 22, 2023, ACE filed an appeal of Judge Allen's June 8, 2023 Opinion and Order. (ECF No. 64.) On July 3, 2023, Formosa filed an opposition. (ECF No. 68.) On July 10, 2023, ACE filed a reply in further support of its appeal. (ECF No. 70.) On October 12, 2023, the Court issued an Opinion and Order denying ACE's appeal and affirming Judge Allen's Opinion and Order dated June 8, 2023. (ECF Nos. 75, 76.)

Thereafter, on January 22, 2024, the parties filed the complete briefing for the Motions for Summary Judgment.[6] (ECF Nos. 85, 86, 87, 88, 89, 90.) On November 25, 2024, the Court issued an Opinion and Order denying both ACE's Motion for Summary Judgment and Formosa's Motion for Partial Summary Judgment. (ECF Nos. 99, 100.)

Given the Court's summary judgment Opinion and Order, the parties agreed to engage in mediation. (ECF No. 101.) On March 26, 2025, Judge Allen held a final pretrial conference (Clerk's Minute Entry Dated March 26, 2025, for proceedings held before Judge Allen), and on April 4, 2025, the parties filed a joint letter informing Judge Allen of their availability for a settlement conference (ECF No. 117). Judge Allen ordered the parties to file a revised proposed

---

[6] ACE's Motion for Summary Judgment is docketed as ECF No. 85 with the supporting brief docketed as ECF No. 85-1, Formosa's Opposition is docketed as ECF No. 88 with the opposition brief docketed as ECF No. 88-8, and ACE's Reply is docketed as ECF No. 90 with the reply brief being docketed as same. Formosa's Motion for Partial Summary Judgment is docketed as ECF No. 86 with the supporting brief docketed as ECF No. 86-4, ACE's Opposition is docketed as ECF No. 87 with the opposition brief being docketed as same, and Formosa's Reply is docketed as ECF No. 89 with the reply brief being docketed as same.

final pretrial order on April 24, 2025 (ECF No. 122) and issued an Amended Final Pretrial Order on May 9, 2025 (ECF No. 127).

On June 2, 2025, Judge Allen held an in-person settlement conference with the parties. (Clerk's Minute Entry Dated June 2, 2025, for proceedings held before Judge Allen.) On July 1, 2025, the Court held a case management conference and scheduled a settlement conference for September 11, 2025.[7] (ECF No. 130.) On September 9, 2025, the Court held an in-person settlement conference with the parties. (ECF No. 145.)

On September 2, 2025, the parties filed their respective Motions *in Limine*. (ECF Nos. 135, 136, 137, 138, 139, 140, 141, 142, 143, 144.) On September 30, 2025, the parties filed their respective oppositions to the Motions *in Limine*. (ECF Nos. 148, 149, 150, 151, 152, 153, 154, 155, 156, 157.)[8] The parties filed their respective replies on October 7, 2025. (ECF Nos. 159, 160, 161, 162, 163, 164, 165, 166.) The Court held oral argument for these motions on December 3, 2025. (ECF No. 171.) The parties filed their respective post-oral argument briefs on January 30, 2026.[9] (ECF Nos. 177, 178.)

---

[7] The settlement conference was rescheduled for September 9, 2025. (Clerk's August 18, 2025, entry.)

[8] As discussed above, Formosa's filing with respect to ACE's third motion *in limine* is a "response," not an opposition because Formosa does not intend to present the privileged documents that ACE seeks to exclude. (ECF No. 150 at 2.) Accordingly, ACE did not file a reply to Formosa's "response."

[9] The parties initially agreed to adjourn the original December 19, 2025, deadline to file their respective supplemental ten-page submissions with respect to the motions *in limine* to January 15, 2026 (ECF No. 172), which the Court granted (ECF No. 173). On January 12, 2026, the parties again sought a further extension to file their supplemental submissions, requesting an adjournment of the deadline to January 30, 2026 (ECF No. 174), which the Court granted (ECF No. 175).

## II.    LEGAL STANDARD

### A.    Motion *in Limine*

District courts have "wide discretion in determining the admissibility of evidence under the Federal Rules." *U.S. v. Abel*, 469 U.S. 45, 54 (1984). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The Federal Rules of Evidence embody a "strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Supernus Pharms., Inc. v. Ajanta Pharma Ltd.*, Civ. A. No. 21-14268, 2023 WL 4866348, at *1 (D.N.J. July 31, 2023) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)).

A district court's ruling on a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. U.S.*, 469 U.S. 38, 41–42 (1984). "A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Supernus Pharms.*, 2023 WL 4866348, at *2 (quoting *U.S. v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)).

12

### B.    Exclusion of Evidence

Under the Federal Rules of Evidence ("Rules"), irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, the court may exclude even relevant evidence when its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Pursuant to Rule 403, courts must "engage in balancing to determine whether the probative value of the evidence is 'substantially outweighed' by the negative factors listed in Rule 403." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002). This balancing test requires a "cost/benefit analysis," because "relevance alone does not ensure its admissibility." *Id.*

### C.    Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). The Third Circuit has held "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

"[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Motions to exclude evidence are within a district court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). However, Rule 702 "has a liberal policy of admissibility." *Kannankeril*, 128 F.3d at 806. "If the

13

expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Id*. at 809.

As to qualification, this prong of the *Daubert* analysis "refers to the requirement that the witness possess specialized expertise." *MD Retail Corp. v. Guard Ins. Grp.*, Civ. A. No. 14-6589, 2017 WL 1164499, at \*5 (D.N.J. Mar. 28, 2017). The Third Circuit has "interpreted Rule 702's qualification requirement liberally." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). In the Third Circuit, "a broad range of knowledge, skills, and training qualify an expert as such." *Paoli*, 35 F.3d at 741.

As to reliability, "[u]nder the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril*, 128 F.3d at 806 (citing *Daubert*, 509 U.S. at 589). "[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Along with "any other[ ] [factors] that are relevant," courts consider the following factors in determining the reliability of a proposed expert's testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 n.8 (citing *Daubert*, 509 U.S. at 591; *U.S. v. Downing*, 753 F.2d 1224 (3d Cir. 1985)); *Schneider ex rel. Est. of Schneider*, 320 F.3d at 405; *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 290 (D.N.J. 2011). The party offering the expert's testimony carries the

14

burden to establish admissibility by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). Nonetheless, the "embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda*, 520 F.3d at 243; *see also Kannankeril*, 128 F.3d at 806 (explaining Rule 702 "has a liberal policy of admissibility").

When an expert's testimony involves "technical knowledge," as opposed to "traditional scientific knowledge," the reliability analysis turns "not on the methodology of the expert testimony, but on the professional and personal experience of the witness." *Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). There is an abundance of caselaw establishing that an expert's methodology may be supported by "personal knowledge or experience." *Kumho*, 526 U.S. at 150; *see also U.S. v. Ford*, 481 F.3d 215, 219 (3d Cir. 2007); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 165 (D.N.J. 2008). Proffered nonscientific testimony involving technical knowledge may not be subjected to the higher standard and review of traditional scientific knowledge. *Failla v. George's Foods, LLC*, Civ. A. No. 20-7109, 2023 WL 7298473, at *4 (D.N.J. Nov. 6, 2023).

Regarding the "fit" requirement, Rule 702 requires an "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To be helpful, expert testimony must be "sufficiently tied to the facts of the case [such] that it will aid the [factfinder] in resolving a factual dispute." *U.S. v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks and citation omitted). On the contrary, "expert evidence which does not relate to an issue in the case is not helpful." *Ford*, 481 F.3d at 219 n.6 (internal quotation marks omitted). The Third Circuit has noted the standard for analyzing

15

the fit of an expert's analysis is "not that high," but "higher than bare relevance." *Paoli*, 35 F.3d at 745.

### D.      Judicial Notice

Rule 201 "authorizes a court to take judicial notice of an adjudicative fact if that fact is 'not subject to reasonable dispute.'" *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (quoting Fed. R. Evid. 201(b)). Facts are not subject to reasonable dispute when they are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re NAHC, Inc. Secs. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (quoting Fed. R. Evid. 201(b)). "Judicial notice may be taken at any stage of the proceeding . . . ." *In re Indian Palms Assocs.*, Ltd., 61 F.3d at 205 (quoting Fed. R. Evid. 201(f)).

For instance, the court may "take judicial notice of relevant legal proceedings." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "Such records may only be judicially noticed to show what was in the public realm at the time, not whether the contents of those documents are true." *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) (internal quotation marks omitted); *see Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006). In contrast, it is improper for the district court to take judicial notice of facts found on a company's website due to authentication concerns. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), *as amended* (Nov. 20, 2007). Additionally, "a company's website is a marketing tool [that may well be] full of imprecise puffery." *Id.*

### III.   DECISION

Formosa filed five motions *in limine* seeking to exclude various expert testimony and evidence offered by ACE. ACE filed five motions *in limine* seeking to exclude certain expert testimony and evidence offered by Formosa and requesting judicial notice of documents from and related to the *Waterkeeper* Litigation. The Court begins with Formosa's motions *in limine* before turning to ACE's motions *in limine*.

### A.   Formosa's Motions *in Limine*

Formosa moves to exclude the following: evidence of plastic discharges after March 24, 2019 (ECF No. 139-1), Levine's expert testimony (ECF No. 141-1), Vaillancourt's expert testimony[10] (ECF No. 142-1), evidence of attorney posturing and mediation communications (ECF No. 143-1), and evidence concerning the reasonableness of Formosa's settlement of the *Waterkeeper* Litigation (ECF No. 144-1).

### 1.   Evidence of Plastic Discharges after March 24, 2019 (First Motion)

Formosa asserts that testimony evidence of alleged plastic discharges from the date of the court's decision in the *Waterkeeper* Litigation to the present is not relevant to the issues in this case and will serve only to confuse and inflame the jury. (ECF No. 139-1 at 3.) Specifically, Formosa notes the issues in this case are whether there is coverage for pollution conditions asserted in the *Waterkeeper* Litigation, whether any exclusions ACE asserts operate to exclude coverage, whether Formosa violated the cooperation and consent to settle provisions of the subject policy, and whether ACE was prejudiced by any proven breaches of the cooperation and consent to settle provisions of the policy. (*Id.* at 3–4.) Formosa posits any evidence of post-March 24, 2019,

---

[10] Formosa moves only to partially exclude Vaillancourt's expert testimony. (*See generally* ECF No. 142-1.)

discharges is irrelevant to this litigation because the *Waterkeeper* Litigation "was based solely upon pollution conditions at its Point Comfort [Plant] through March 24, 2019" and "Formosa does not seek coverage for liability arising from discharges after that date." (*Id.* at 4.) Moreover, Formosa contends evidence of post-March 24, 2019 discharge will be unfairly prejudicial. (*Id.*)

ACE counters that evidence of post-March 24, 2019 plastic discharges is relevant because it relates to the amount of damages Formosa is seeking against ACE at trial and because Formosa has identified trial witnesses, namely Matt Brogger and Rick Crabtree, who will presumably testify about Formosa's compliance with its permit and its remediation efforts/activities. (ECF No. 157 at 2–3.) ACE also notes this evidence is needed because Formosa "would have to establish which plastics and associated costs were due to" pre-March 24, 2019 discharges. (*Id.* at 3.) Moreover, ACE asserts such evidence is relevant because the Consent Decree in the *Waterkeeper* Litigation contemplates future discharges. (*Id.* at 3.) Additionally, ACE argues Formosa's claims of prejudice are merely speculative. (*Id.*)

In reply, Formosa reiterates it "only seeks coverage for liability arising from the date of the *Waterkeeper* decision." (ECF No. 166 at 2.) Formosa notes this includes coverage for the engagement of a remediation consultant with respect to past discharges and the retention of an independent monitor. (*Id.*) Formosa underscores that it "does not seek and has never sought recovery" of "payments to the Mitigation Trust for discharges after the Consent Decree." (*Id.*) Formosa also argues, "[t]o the extent ACE seeks to distinguish pellets discharged before and after 2019, that is ACE's burden." (*Id.* at 3.) Moreover, Formosa contends its concern about prejudice is not speculative because evidence of continuing plastic discharges would "confuse the issues and mislead the jury, particularly since they will be called upon to decide whether Formosa intentionally violated its [TCEQ] permit." (*Id.* at 4.)

"[R]elevance is not a difficult condition to satisfy under the [Rules]." *United States v. Paz*, 124 F. App'x 743, 746 (3d Cir. 2005). Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, the Court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Coleman*, 306 F.3d at 1343 ("Rule 403 is an 'umbrella rule' spanning the whole of the Federal Rules of Evidence."). "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility." *Coleman*, 306 F.3d at 1343. "However, there is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." *Id.* at 1344. As such, "evidence that is highly probative is exceptionally difficult to exclude." *Id.*

ACE's suggestion that the post-March 14, 2019 discharges "are highly relevant to trial of this [a]ction and the damages sought by Formosa, regardless of when the discharges occurred" is misguided. (ECF No. 157 at 3.) Plastic discharges post-March 14, 2019, have no relevance to the liability coverage Formosa seeks here.[11] As Formosa correctly notes, the only plastic disposal activities for which it seeks coverage are disposal activities *prior to* March 14, 2019. (ECF No. 166 at 3.) Given that evidence of plastic discharges post-March 14, 2019, are of no "consequence

---

[11] At oral argument, while ACE noted that Formosa is seeking "$2 million for remediation, [a] consultant, and [an] independent monitor," ACE responded that what Formosa had "described would all be covered in [the] $50 million settlement" for which it is now "seeking coverage." (ECF No. 176 at 34.)

19

in determining the action," the Court agrees this evidence should be excluded on relevancy grounds. Fed. R. Evid. 401; *see Apple Inc. v. Samsung Elecs. Co.*, Civ. A. No. 11- 1846, 2018 WL 2010621, at \*1 (N.D. Cal. Apr. 30, 2018) (excluding references to evidence post-dating the relevant damages period pursuant to Rule 403).

Moreover, even assuming this evidence is as relevant as ACE suggests, the Court excludes this evidence because "such relevance would be substantially outweighed by the risk of confusing the issues, misleading the jury, wasting time, and unfair prejudice to" Formosa. *Apple Inc.*, 2018 WL 2010621, at \*1. At issue here is whether the intentional non-compliance exclusion applies to bar coverage. (ECF No. 24 at 12.) In other words, at trial, the jury must consider whether Formosa intentionally violated its permit. It follows then that the evidence of continuing plastic discharges may well inflame the jury. The Court shares Formosa's concern the introduction of such evidence risks casting Formosa as a "perpetual bad actor." (ECF No. 178 at 8.)

Because this evidence is not relevant and the risk of prejudice raised by this evidence is beyond the speculative level, Formosa's Motion insofar as it seeks to exclude evidence of plastic discharges post-dating March 24, 2019, is **GRANTED**. *Coleman*, 306 F.3d at 1344 (explaining district courts must assess whether the problems in admitting the challenged evidence substantially outweigh the probative value of the evidence).

### 2.    Steven Levine's Expert Testimony (Second Motion)

Formosa also contends the testimony of Levine should be barred at trial. (ECF No. 141-1 at 6–12.) First, Formosa argues Levine has no background or experience upon which to offer the first five of his opinions.[12] (*Id*. at 6–7.) Formosa asserts Levine has no background or experience

---

[12] The opinions are as follows: (1) "ACE was excluded from any contemporaneous and substantive role in the Case;" (2) "Formosa gave ACE no prior or timely knowledge of any litigation event or issues, and ACE was denied an opportunity to participate at all in any litigation events as a result;"

20

in the insurance industry and his opinions are based solely on his experience as a defense attorney. (*Id*. at 7.) Formosa underscores the fact Levine has never litigated an insurance coverage case. (*Id*.) Formosa also argues Levine lacks "expertise in interpreting insurance policies and does not hold himself out as an expert in insurance coverage. (*Id*.) Furthermore, Formosa notes Levine "has no claims handling experience and no basis to state with expertise how ACE was prejudiced by any purported delay in notice or cooperation." (*Id*.) Formosa also highlights that Levine could not call himself an expert on what constitutes prejudice in the context of the Policy's cooperation and consent to settle clauses (*Id*. at 10), despite his opinion that "ACE was prejudiced as a result of Formosa's conduct" (*Id*. at 6). Given this supposed lack of experience and expertise, Formosa essentially argues Levine is not qualified to opine on the insurance policy's cooperation provision.

Second, Formosa argues Levine's first five opinions consist solely of his subjective belief and contradict undisputed evidence in this case. (*Id*. at 8–10.) To support this argument, Formosa proffers a list of so-called "undisputed evidence," which supposedly contradict Levine's assertion that ACE excluded.[13] (*Id*. at 9.) Additionally, Formosa cites to various parts of Levine's deposition

---

(3) "Formosa's conduct was contrary to the Policy's requirements;" (4) "[i]n [Levine's] experience, Formosa's conduct was contrary to standard practice, in which insureds routinely and customarily give their insurers advance notice and opportunity to participate in significant litigation events and keep their insurers timely informed of major litigation developments;" (5) "[t]he conclusions above support a finding that ACE was prejudiced as a result of Formosa's conduct;" and (6) "[t]he [mitigation projects] contained in the [Consent Decree] were the result of a settlement agreement between Formosa and Waterkeeper. The MPs could not have been awarded by the Court under the Clean Water Act and were not 'required by environmental law.'" (ECF No. 141-4 at 22.)

[13] As noted in the Amended Final Pretrial Order, ACE contests Formosa's claim that ACE never instructed Formosa not to make any settlement offers without first discussing with ACE. (ECF No. 127 at 8.) ACE also contests Formosa's claim that it "never asserted a lack of cooperation before issuing its denial letter." (*Id*.) However, it is uncontested Formosa's defense counsel gave ACE adjuster David Klink his phone number and invited Klink to contact him for anything. (Dep. Test. of David Klink (ECF No. 143-3) at 25.)

transcript to argue Levine's first five opinions "are not based upon any facts in the record." (*Id*. at 8–9.) And with regard to Levine's fifth opinion, Formosa points out Levine could not testify the outcome of the *Waterkeeper* Litigation would have been any different, even if Formosa's counsel did all of the things Levine claims he should have done. (*Id.* at 10.)

Last, Formosa argues the Court should exclude Levine's sixth opinion because it is a pure legal conclusion. (*Id.* at 11.) Relatedly, Formosa argues Levine's report opining "Formosa pursued a course of action to avoid all liabilities not covered by the policy in the form of the consent decree" was "based upon nothing more than Levine's assumption" and should be excluded.[14] (*Id.* at 11–12 (citing Expert Report of Levine (ECF No. 141-4) at 10).)

In opposition, ACE argues Levine is qualified to offer opinions concerning Formosa's handling of the *Waterkeeper* Litigation. (ECF No. 154-4 at 2–9.) ACE contends Formosa is wrong to focus on Levine's experience with insurance coverage cases because what matters is Levine's experience with Clean Water Act suits, namely his "extensive experience defending against and communicating . . . with insurers." (*Id.* at 154 at 9.) Accordingly, ACE asserts Levine is qualified to render expert opinions in this case. (*Id*. at 2–6.)[15]

---

[14] ACE does not contest this argument. (ECF No. 154 at 4–12.)

[15] As an aside, ACE points out that Formosa's motion misrepresents Levine's deposition testimony. (ECF No. 154 at 5–6.) ACE explains that while Formosa has framed Levine as being unaware of "any industry standards that apply to the interaction between an insurance company and its policyholder," without "expertise in interpreting insurance policies," and someone who "does not hold himself out as an expert in insurance coverage," Levine merely stated his engagement in this matter was not as an expert in insurance coverage. (*Id.* at 5 (quoting ECF No. 141-1 at 11).) ACE also quotes excerpts from Levine's deposition testimony, which describe Formosa's purported shortcomings in interacting with ACE and how Formosa should have supposedly worked with ACE and its representatives during the Clean Water Act litigation. (*Id.* at 6.)

Second, ACE argues Levine's experience as a litigator and the established facts of the coverage action support Levine's opinions concerning Formosa's handling of the *Waterkeeper* Litigation. (ECF No. 154 at 11.) At the outset, ACE contends that Formosa mischaracterizes Third Circuit law governing the reliability of expert testimony.[16] (*Id.* at 11–12.) ACE then argues Levine's testimony is reliable for three main reasons: (1) Levine utilized his experience as an environmental attorney to review the Policy and the pertinent documents in the *Waterkeeper* Litigation and this coverage action, (2) Levine's first five opinions do not conflict with the Policy's reporting and cooperation provisions or the factual record of the Coverage Action, and (3) Levine's opinion about prejudice helps explain how Formosa's handling of the *Waterkeeper* Litigation and settlement impaired ACE's position.[17] (*Id.* at 12–16.)

Third, ACE argues Levine's sixth opinion was offered to provide essential context to ACE's argument concerning prejudice—"that Formosa intentionally engineered the Consent Decree to transform Formosa's non-covered liability for [Clean Water Act] fines and penalties into

---

[16] Specifically, ACE notes the court in *Krys v. Aaron* disqualified the subject expert "because he impermissibly testified as to defendants' state of mind," which ACE argues Levine did not do. (ECF No. 154 at 11 (citing *Krys v. Aaron*, 112 F. Supp. 3d 181, 203 (D.N.J. 2015).) ACE also argues Formosa's reliance on this Court's holding in *In re Insulin Pricing Litigation*, Civ. A. No. 17-699, 2024 WL 416500 (D.N.J. 2024), is misplaced because this Court disqualification of the subject expert's testimony was limited. (*Id.* (citing *In re Insulin Pricing Litig.*, 2024 WL 416500, at *12.) There, this Court identified no case where the expert's methodology was used to establish whether price-setting conduct is unfair or unconscionable and disqualified the expert only to the extent the proponent intended to rely on the expert testimony to answer this question of law. *Id.* at *11–12 (noting it is for the jury to decide the legal question of whether the defendants' conduct was unfair or unconscionable under the applicable state law). Indeed, ACE highlights the relevance of *In re Insulin Pricing Litigation*, is this Court's finding the expert's methodology was otherwise sufficiently reliable to survive *Daubert*. (ECF No. 154 at 11–12 (citing *In re Insulin Pricing Litig.*, 2024 WL 416500, at *12).)

[17] Stated differently, ACE contends "prejudice" is not necessarily whether ACE's inclusion in the *Waterkeeper* Litigation and settlement would have altered the outcome. (ECF No. 154 at 15.)

covered 'remediation costs.'" (ECF 154 at 16.) ACE further notes any alleged shortcomings should go to the weight of the evidence and not to admissibility. (*Id.*)

In reply, Formosa makes the following arguments: Levine is unqualified to testify about Formosa's handling of the *Waterkeeper* Litigation (ECF No. 162 at 2); Levine is not needed to help a jury understand how an insurer and insured should cooperate (*id.* at 3–4); Levine's testimony shows he lacks knowledge and experience concerning the relationship between an insured and a policyholder (*id.* at 4); ACE's theory of prejudice is wrong as a matter of law (*id.* at 5); and Levine's sixth opinion about prejudice was strictly tied to ACE's supposed exclusion from the *Waterkeeper* Litigation (*id.* at 5–6).

Levine's testimony has the potential to assist the jury, *Kannankeril*, 128 F.3d at 806, and it satisfies Rule 702's three requirements. *Karlo*, 849 F.3d at 80. However, pursuant to Rule 704, Levine's testimony respecting his sixth opinion is an improper legal opinion and must be excluded. *United States v. Villaneuva*, 604 F. Sup. 3d 252, 257 (D.N.J. 2022) (citing *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013)).

### a.   Levine's First Five Opinions

Turning first to Levine's first five opinions, given Rule 702's qualifications requirement is interpreted liberally, the Court finds Levine has the knowledge, skills, and training necessary to qualify him to provide expert testimony concerning Formosa's handling of the *Waterkeeper* Litigation. *Pineda*, 520 F.3d at 244.

While Levine may not be an expert in the insurance industry, he has extensive experience litigating matters similar to the *Waterkeeper* Litigation. (ECF No. 141-3 at 12–13, 45–46; *see also* ECF No. 176 at 47 ("Levine is an experienced environmental attorney [who] has practiced and litigated these cases for [forty] some-odd years. . . . [I]f anybody knows what the insured should

be doing, he is the guy.").) As Levine noted in his deposition testimony, he has "handled quite a number of matters . . . for quite a number [of] different years" and gained experience with respect to "communication and the kind of things that are issue in this case." (*Id.* at 13.) Simply put, Levine draws upon his years of experience defending against Clean Water Act citizen suits to opine on how defense counsel should act in other Clean Water Act suits. (*Id.* at 46.) Formosa contends its "'handling' of the *Waterkeeper* Litigation is not at issue in this litigation." (ECF No. 162 at 2.) What is at issue, according to Formosa, is whether Formosa breached the cooperation clause in the Policy. (*Id.*)

This is a distinction without a difference. While Formosa is correct that the latter is at issue in this litigation, Formosa's handling of the *Waterkeeper* Litigation is relevant to deciding whether Formosa breached the cooperation clause in the Policy because, as Formosa agrees, "the custom and practice in the industry . . . will be helpful to the jurors." (*Id.* at 3.) While Formosa contends Levine "knows nothing about" the custom and practice in the industry (*id.*), Levine's deposition testimony says otherwise. (ECF No. 141-3 at 47–48.) In response to questions from Formosa's attorney, Levine explained his opinions spoke to the "custom and practice that [he had] been involved in." (ECF No. 141-3 at 47–48 (explaining his opinions stem from practice over the years "serving as defense counsel being paid by an insurance company").) Because Rule 702's qualification factor is to be applied liberally, Levine is qualified to testify at trial concerning Formosa's handling of the *Waterkeeper* Litigation. *Pineda*, 520 F.3d at 244 (explaining it is an "abuse of discretion to exclude testimony simply because . . . the proposed expert does not have the specialization that the court considers most appropriate").

Further, Levine's expert report and proffered testimony are reliable and not, as Formosa contends, merely subjective beliefs contradicted by undisputed evidence in this case. In the Rule

25

702 context, the reliability factor essentially requires the Court to examine the expert's conclusions "to determine whether [their conclusions] could reliably flow from the facts known to the expert and [the] methodology used." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, 225 n.7 (3d Cir. 2013) (internal quotation marks omitted) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)). Formosa's arguments seek to paint Levine's expert report and testimony as untethered from the evidence because the evidence supposedly refutes Levine's opinion that ACE was excluded.[18] But the evidence is not so clear. As ACE correctly points out, "ACE [has] expressly reserved rights under all provisions of it rights and duties under the Policy, including the Policy's Consent-to-Settle Clause." (ECF No. 154 at 14.) In other words, Levine's exclusion opinion stemmed from his understanding that Formosa, as the insured, was responsible for affirmatively reaching out to ACE. It was no matter, according to Levine, that Klink, an ACE adjuster, was given the phone number of Formosa's defense counsel. (ECF No. 141-3 at 25.) In essence, Levine's theory of exclusion is based on Formosa's failure to affirmatively contact ACE, not that ACE was somehow prevented from contacting Formosa. While the parties may differ as to whether there ultimately was exclusion, the Court finds Levine's opinion as to the alleged exclusion is reliable.

Moreover, Formosa argues because Levine could neither "testify that the outcome of the *Waterkeeper* Litigation would have been different [had] Formosa's counsel d[one] all . . . the things . . . Levine claims he should have done," nor "call himself an expert on what constitutes prejudice

---

[18] According to Formosa, these three facts show Levine's expert testimony is unreliable because they are patently refuted by the evidence: (1) "ACE never instructed Formosa to not make any settlement offers without first discussing with ACE," (2) "ACE never asserted that Formosa was not cooperating with ACE, or otherwise violating the cooperation clause in the policy, until ACE issued its denial letter on December 13, 2019," and (3) "Formosa's defense counsel gave ACE adjuster David Klink his phone number and invited Mr. Klink to contact him for anything." (ECF No. 141-1 at 13.)

in the context of the Policy's cooperation and consent to settle clauses," his argument is somehow unreliable. (ECF No. 141-1 at 14.)

The Texas Supreme Court has held an "insurer [may] establish[] prejudice from a settlement to which it did not agree by showing that the insured's unilateral settlement was a material breach of the policy—that is, that it *significantly impaired the insurer's position*." *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 756 (Tex. 2013) (emphasis added). ACE may attempt to establish prejudice by showing Formosa's behavior in the *Waterkeeper* Litigation significantly impaired ACE's position, rather than by not only by showing there would have been a difference in the outcome of the *Waterkeeper* Litigation. *See id.* Under Texas law, an insurer is not prejudiced when it is in the same position it would have been in had the insured complied with the insurance policy's provisions. *See Sentry Select Ins. Co. v. Lopez*, Civ. A. No. 14-284, 2016 WL 4257751, at *7 (W.D. Tex. Mar. 18, 2016). But just because Levine cannot testify that the outcome of the *Waterkeeper* Litigation would have been different had Formosa done all the things "Levine claims he should have done" (ECF No. 141-1 at 14), it does not mean Levine's testimony cannot establish Formosa's conduct "significantly impaired [ACE's] position," *i.e.*, prejudice, *Lennar Corp.*, 413 S.W.3d at 756.

Additionally, Formosa mischaracterizes Levine's deposition testimony by reducing it to the following: "Levine could not call himself an expert on what constitutes prejudice in the context of the Policy's cooperation and consent to settle clauses." (ECF No. 141-1 at 14.) But a closer look at the deposition transcript reveals Levine was "offering [him]self as an expert as [sic] prejudice in the form of who is put at an advantage and who is put at a disadvantage in a litigated situation when the party with access to the information doesn't provide it to the party that needs the information." (ECF No. 141-3 at 31.) From this, it is apparent Levine's opinion about prejudice

27

stemmed from his experience litigating matters like the *Waterkeeper* Litigation. (*Id.* at 31–32 ("It's a . . . working person's definition of prejudice. . . . [R]esolving cases under litigation . . . [i]s all about giving evidence. And a party that has information from the other side is prejudicing that other party.").) Given Levine's years of experience defending against Clean Water Act citizen suits (*id.* at 46), Levine's expert testimony is reliable insofar as it speaks to how defense counsel should act in other Clean Water Act suits, which includes whether Formosa's conduct prejudiced ACE, *see United States v. Walker*, 657 F.3d 160, 175–76 (3d Cir. 2011) (holding expert's opinion based upon his personal experiences over a period of decades provided sufficient knowledge); *see also Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 328–29 (3d Cir. 2002) (noting specialized knowledge can be based upon "practical experience").

### b. Levine's Sixth Opinion

Turning to Levine's sixth opinion, Formosa rightly argues the Court should exclude the opinion because it is merely a legal conclusion. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (stating Rule 704 "prohibits experts from opining about . . . the law"). Without citing to any law, Formosa argues the Court should nonetheless admit Levine's sixth opinion because it is "offered to provide context that was essential to ACE's argument concerning prejudice[, *i.e.*,] that Formosa intentionally engineered the Consent Decree to transform Formosa's non-covered liability . . . into covered 'remediation costs.'" (ECF No. 154 at 16.) But Rule 704 clearly bars Levine from testifying the projects Formosa agreed to undertake in the Consent Decree could not have been awarded by the *Waterkeeper* Court under the Clean Water Act and these projects were not required by environmental law. (ECF No. 141-4 at 21.) Testimony by Levine "on the above-enumerated subjects—which involves the application of legal principles and doctrines to the facts of this case—clearly exceeds the proper role of an expert witness." *Jacoby Donner, P.C. v.*

*Aristone Realty Cap., LLC*, Civ. A. No. 17-2206, 2020 WL 5095499, at \*19 (E.D. Pa. Aug. 28, 2020). Rule 704 bars Levine's sixth opinion.

Accordingly, Formosa's Motions *in Limine* seeking to exclude Levine's expert testimony as to his first five opinions is **DENIED** and the Motion insofar as it seeks to exclude testimony as to his sixth opinion is **GRANTED**.[19]

### 3.    Guy Vaillancourt's Expert Testimony (Third Motion)

Formosa also seeks to partially exclude Vaillancourt's expert testimony at trial because it fails to meet Rule 702's reliability and fit requirements. (ECF No. 142-1.) Specifically, Formosa seeks to exclude Vaillancourt's first opinion that "Formosa, [the EPA], and other agencies were well aware of plastic contamination prior to the Policy's inception on July 1, 2010, and Formosa should have reported this contamination to ACE." (*Id.* at 4.) As to "reliability,"[20] Formosa contends Vaillancourt lacks the expertise to opine on "what should or should not have been disclosed to" ACE because he has "no insurance industry expertise." (*Id.* at 7–9.) As to "fit," Formosa argues Vaillancourt's first opinion "does not rely on any special expertise, scientific, analysis or methodology" and a "jury can determine for themselves" whether Formosa was aware of the persistent issue with plastic pollution. (*Id.* at 8.) As such, Formosa contends Vaillancourt's

---

[19] Formosa also seeks to exclude Levine's opinion that "Formosa pursued a course of action that, to the maximum extent possible, avoided all liabilities not covered by the Policy." (ECF No. 141-4 at 10.) It appears ACE has not specifically contested this request. (ECF No. 154 at 16–17.) Formosa points out that Levine confirmed he is not aware of any evidence that Formosa pursued a course of action to avoid all liabilities not covered by the policy in the form of the Consent Decree. (ECF No. 141-1 at 15–16.) As such, this opinion is excluded insofar as it is unmoored from any factual evidence in the record and, therefore, unreliable. *Kmart Corp.*, 233 F.3d at 745 (explaining reliability does not arise from an expert's opinion based on subjective belief or unsupported speculation).

[20] In a heading, Formosa argues Vaillancourt is "[n]ot [q]ualified to [o]ffer [i]nsurance [o]pinions" (ECF No. 142-1 at 8), but rather than expounding on this Rule 702 prong, Formosa's brief focuses only on the reliability and fit of Vaillancourt's testimony as to his first opinion (*id.* at 8–10).

mere recitation of the factual record would prejudice Formosa if given the imprimatur of "expert testimony." (*Id.* at 9.) Additionally, Formosa argues Vaillancourt's first opinion impermissibly addresses Formosa's alleged state of mind. (*Id.*)

ACE counters Vaillancourt's testimony is reliable because he has "extensive experience in the environmental industry" and comprehensively reviewed "[a]vailable documents including technical reports, maps, correspondence[s], and other materials produced in this [action], [the Texas Commission on Environmental Quality] proceedings, and the underlying" *Waterkeeper* Litigation to form his opinions. (ECF No. 153 at 8–9, 11.) Additionally, in reliance upon *Krys v. Aaron*, 112 F. Supp. 3d 181, 203 n.25 (D.N.J. 2015), ACE further counters Vaillancourt's first opinion "rests squarely within the province of an expert" because it permissibly addresses what Formosa should have disclosed to ACE and does not concern Formosa's state of mind. (*Id.* at 10–11.) Moreover, ACE contends Vaillancourt's first opinion does not simply regurgitate factual testimony because Vaillancourt drew upon independent research and relied on sources like publications from Center for Public Integrity and the EPA. (*Id.* at 10.) In other words, without expressly addressing "fit," ACE argues Vaillancourt's testimony "will assist the jury because it will 'provid[e] it with relevant information, necessary to reasoned decision of the case." (*Id.* at 8 (quoting *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2022) (addressing the "fit" prong)).)

Formosa replies largely by arguing Vaillancourt's first opinion is in fact excludable pursuant to Rules 702 and 401 because Vaillancourt opines on "what was known in the industry in *general*" to support Formosa's assertion that coverage is barred by the Known Conditions Exclusion. (ECF No. 163 at 2.) Formosa points out Vaillancourt testified Formosa "clearly knew [it] had pellet contamination outside of their facility in the early '90s, [but] *whether [it] considered*

30

*that a violation of their permit or not, [he didn't] know*." (*Id.* at 3.) Additionally, Formosa reiterates its argument that Vaillancourt's position is wholly unsupported, highlighting that his site visit in January 2024 was irrelevant because the coverage issue in this case concerns only "plastic discharges leading up to the [*Waterkeeper*] Court's decision on March 24, 2019." (*Id.*) Moreover, Formosa disputes ACE's reliance upon *Krys* by arguing that the expert in *Krys* "could testify about what should have occurred [because his opinion was] based upon 'pertinent regulations and generally accepted industry customs and practices.'" (*Id.* at 4 (quoting *Krys*, 112 F. Supp. 3d at 201).)

Here, while "relevance is not a difficult condition to satisfy under the Federal Rules of Evidence," Vaillancourt's first opinion is excluded. *United States v. Paz*, 124 F. App'x 743, 746 (3d Cir. 2005). Putting aside arguments concerning "reliability," Formosa correctly argues Vaillancourt's opinion is irrelevant. As ACE itself notes, it retained "Vaillancourt in [this] action . . . to opine on Formosa[] and other entities' knowledge of discharge of plastics prior to the Policy's . . . inception date and whether Formosa should have disclosed the same to ACE in its application for the Policy." (ECF No. 153 at 5.) In other words, ACE intends to use Vaillancourt's testimony to support its assertion that coverage is barred by the Known Conditions Exclusion. (*Id.*) But the sources relied on by Vaillancourt do not support the opinion that Formosa was "well aware of the persistent issue with plastic pollution." (ECF No. 142-3 at 5.) This is particularly true where Formosa held a permit allowing it to discharge trace amounts of plastic (ECF No. 88-1 ¶ 3; ECF No. 90-1 ¶ 3), and Vaillancourt could not opine on "*whether [Formosa] considered [any supposed pellet contamination outside of their facility in the early '90s] a violation of [its] permit*" (ECF No. 163 at 3 (emphasis in the original)). As Formosa argued during oral argument, "[w]e already know that Formosa was discharging plastics back then. The issue is whether Formosa knew it was

31

violating its permit when it was discharging plastics." (ECF No. 176 at 37.) In that sense, this testimony is not only irrelevant but fails to pass the "fit" prong of Rule 702. *Paoli*, 35 F.3d at 742 (holding that an expert opinion may not be based on unsupported speculation).

Although Vaillancourt's testimony may shed some light on what was generally known in the industry, this information is altogether not relevant (and likely prejudicial). What would be relevant, especially given ACE's intended use of Vaillancourt's testimony, is whether any "responsible person" received any report of a "pollution condition" or would have thought a "pollution condition" existed. (ECF No. 85-2 ¶ 12; ECF No. 88 ¶ 12.) However, what was generally known in the industry is not relevant. Fed. R. Evid. 401, 402. As such, Formosa's Motion *in Limine* is **GRANTED** insofar as it seeks to partially exclude Vaillancourt's testimony as to his first opinion because it is not relevant to what Formosa knew on the date of the Policy's inception and fails to meet the "fit" prong of Rule 702.

### 4.   Evidence of Attorney Posturing and Mediation Communications (Fourth Motion)

Formosa asks the Court to preclude ACE from using Trial Exhibits 187, 189, 212, and 160/222, *i.e.*, letters written by attorneys at Kelly Hart—Formosa's defense counsel—to either the mediator for the *Waterkeeper* Litigation or Erin Gaines—counsel for Diane Wilson—because: (1) they are protected settlement and medication communications under Rule 408, Tex. Civ. Prac. & Rem. Code § 154.073, and N.J. Stat. Ann. § 2A:23C-4 ("New Jersey Uniform Mediation Act"),[21] (2) would undermine the policy goal of encouraging settlements underlying Rule 408 if admitted, (3) are hearsay pursuant to Rule 801, and (4) are otherwise irrelevant given they are merely defense

---

[21] Formosa includes no choice of law analysis in its brief (ECF 143-1), and neither does ACE (ECF No. 156).

counsel's legal opinions[22] (ECF No. 143-1 at 9–11). Additionally, Formosa contends "[a]llowing the jury to consider these communications would risk unfair prejudice, mislead the jury into confusing counsel's bargaining positions with the actual merits of the case, and go against the policies that [Rules] 408 [and] 801, Texas [l]aw and New Jersey law protect." (*Id.* at 11.)

In opposition, ACE argues admission of the evidence at issue would not contradict Rule 408 because ACE's intended reliance on this evidence had "nothing to do with establishing liability, invalidity of a claim, or the amount of a claim." (ECF No. 156 at 4.) Specifically, ACE maintains it intends to use the communications, among other reasons, to show Formosa intentionally engineered the Consent Decree to transform Formosa's non-covered liability for Clean Water Act penalties into covered "remediation costs," Formosa breached the Policy by entering into the Consent Decree without ACE's knowledge or consent, and ACE was prejudiced as a result. (*Id.* at 5.) ACE also contends the communications at issue fall within both an express exception to the New Jersey Uniform Mediation Act, and exception in Texas Civil Practice & Remedy Code § 154.073. (*Id.* at 5, 7.) Essentially, ACE argues Texas Rule of Evidence 408 does not bar settlement negotiations if admitted for a purpose other than proving the liability for or the invalidity of a claim or its amount. (*Id.* at 6 (citing *TCA Bldg. Co. v. Nw. Res. Co.*, 922 S.W.2d 629, 636 (Tex. App. 1996), *writ denied* (Feb. 13, 1997)).)

As to the question of whether the settlement statements constitute hearsay, ACE explains the communications are not hearsay because ACE is not attempting to offer the communications to prove the truth of the matter asserted in the statement. (*Id.* at 8.) ACE also argues even if the communications were hearsay, they fall within a hearsay exception because they are "supported

---

[22] Trial Exhibits 160 and 222 are duplicative. (*Compare* ECF No. 143-3 at 9–13, *with id.* at 17–21.) Going forward, the memo will simply refer to these exhibits as Exhibit 160.

by sufficient guarantees of trustworthiness" and "are more probative on the point for which they are offered than any other evidence that [ACE] can obtain through reasonable efforts."[23] (*Id.* (quoting Fed. R. Evid. 807).)

In reply, Formosa first explains the communications at issue do not support ACE's argument that Formosa intentionally engineered the Consent Decree. (ECF No. 164 at 3.) However, Formosa's Reply Brief mainly addresses ACE's arguments regarding the New Jersey Uniform Mediation Act. (*Id.* at 3-6.) Formosa points out that ACE fails to show the communications fall under an exception to the New Jersey Uniform Mediation Act (*id.* at 3), as ACE fails to explain "how or why the evidence is not otherwise available." N.J. Stat. Ann. § 2A:23C-6(b)(2). Formosa notes ACE's reliance on *Berardino v. Prestige Management Services, Inc.*, Civ. A. Nos. 14-3451, 14-3492, 2017 WL 9690965, at *5 (D.N.J. Dec. 8, 2017), is misplaced as *Berardino* not only dealt with a subpoena for discover and not admissibility but also concerned a settlement agreement itself and not settlement communications and attorney posturing in the context of mediation (*id.* at 4-5). Additionally, Formosa argues ACE's reliance on *West Palm Beach Hotel, LLC v. Atlanta Underground, LLC*, 626 F. App'x 37 (3d Cir. 2015), is likewise misplaced because it did not involve the admissibility of settlement or mediation communications for trial (*id.* at 5–6).

---

[23] ACE also makes various arguments pertaining to Rule 403 and New Jersey's version of Rule 403, but the Court need not address these arguments because they do not form any basis of Formosa's Motion *In Limine*. (ECF No. 156 7–8.)

### a.   Choice of Law Analysis

Here, applying Texas law, the commutations at issue must be excluded. In diversity cases,[24] Rule 501 refers "district court[s], on questions of privilege, to state law."[25] *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 965 (3d Cir. 1988) (addressing the attorney client privilege); *see also Napolitano v. Corbishley*, Civ. A. Nos. 20-12712, 20-15429, 2021 WL 3486901, at *2 n.2 (D.N.J. Aug. 9, 2021) ("Since this case is here on federal diversity jurisdiction, New Jersey law governs the extent to which the mediation privilege applies in this case.").

Although neither Formosa nor ACE has conducted a meaningful choice of law analysis, both parties make their respective arguments by citing the applicability of both New Jersey and Texas laws.[26] (ECF No. 143-1 at 9–11; ECF No. 156 at 5–9.) Accordingly, the Court must decide whether New Jersey or Texas law should apply.

"A federal court sitting in diversity applies the choice-of-law rules of the forum state—here, New Jersey—to determine the controlling law." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). "New Jersey has adopted the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws[,]" which is a two-part test. *Id.* "Under New Jersey law, where parties lack a contractual choice-of-law clause, as here, [a court] first 'determine[s] whether an actual conflict exists' by assessing the 'substance of the potentially applicable laws.'" *Spalter v. Protective Life Ins.*, Civ. A. No. 22-3344, 2024 WL 658975, at *2 n.3

---

[24] Formosa's only claim against ACE is an alleged breach of contract. (ECF No. 1); *c.f. Swanger v. Warrior Run Sch. Dist.*, 659 F. App'x 120, 124 (3d Cir. 2016) ("[I]n cases involving *both* federal and state claims . . . Rule 501 directs us to apply the federal privilege law." (emphasis added)).

[25] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

[26] Neither party addressed the choice of law issue at oral argument. (*See generally* ECF No. 176.)

(3d Cir. Feb. 16, 2024) (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008)).

The New Jersey Supreme Court has specified this step is "done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Camp Jaycee*, 962 A.2d at 460. If no conflict exists, "there is no choice-of-law issue to be resolved." *Id.* An actual conflict exists when there is a "substantive difference" between the relevant laws of the states. *DeMarco v. Stoddard*, 125 A.3d 367, 383 (N.J. 2015) (citing *Cornett v. Johnson & Johnson*, 48 A.3d 1031, 1047 (N.J. 2012); *Camp Jaycee*, 962 A.2d at 460). Notably, "[a] substantive difference between the law of one state and another exists when the difference is offensive or repugnant to the public policy of this State." *Id.* (citing *Cornett*, 48 A.3d at 1050). "In other words, a true conflict of law arises when choosing between one or another state's statute of limitations is outcome determinative." *McCarrell v. Hoffmann–La Roche, Inc.*, 153 A.3d 207, 216 (2017).

Only if a conflict exists, does the Court proceed to the second part of the test and "determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 962 A.2d at 460). In other words, "the Court determines 'which state has the most meaningful connections with and interests in the transaction and the parties.'" *Spence-Parker v. Del. River & Bay Auth.*, 616 F. Supp. 2d 509, 523 (D.N.J. 2009) (quoting *NL Indus., Inc. v. Comm. Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995)).

Under the New Jersey Uniform Mediation Act,

> [mediation communications] shall not be . . . admissible in evidence in a proceeding [unless a court] . . . finds, after a hearing in camera, that . . . [(1)] the proponent of the evidence has shown that the evidence is not otherwise available, [(2)] that there is a need for the evidence that substantially outweighs the interest in protecting confidentiality, and [(3)] that the mediation communication is sought or offered in . . . a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation.

36

N.J. Stat. Ann. § 2A:23C-4. However, under Texas's Alternative Dispute Resolution Procedures

Act ("ADR Act"),

> a communication relating to the subject matter of any civil . . . dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings . . . may not be used as evidence against the participant in any judicial . . . proceeding. [However,] *[a]n oral communication or written material used in or made a part of an alternative dispute resolution procedure is admissible or discoverable if it is admissible or discoverable independent of the procedure.*

Tex. Civ. Prac. & Rem. Code Ann. § 154.073 (emphasis added).[27]

Formosa and ACE contend that these rules mandate the same outcome, but they disagree

on what that outcome is. (ECF No. 143-1 at 9; ECF No. 156 at 6 ("The result is the same under

Texas law . . . .").) Formosa asserts the communications at issue are barred under both New Jersey

and Texas law. (ECF No. 143-1 at 9.) ACE argues the opposite is true. (ECF No. 156 at 6.) In

other words, both parties seemingly suggest the Court need not engage in a choice of law analysis.

Upon the Court's review, a conflict exists—it is clear that "choosing between" Texas and New

Jersey's mediation privilege laws "is outcome determinative." *McCarrell*, 153 A.3d at 216. Indeed,

Texas's law is far more protective than New Jersey's. Texas's ADR Act ("Texas ADR Act") "has

been described as the most complete in conferring the cloak of confidentiality on communications

made during alternative dispute resolution procedures." *Smith v. Smith*, 154 F.R.D. 661, 666–67

(N.D. Tex. 1994). The ADR Act's only "exceptions" as to the "oral communication or written

material used in or made a part of an alternative dispute resolution is [that which is] admissible . . .

independent of the procedure" and "other legal requirements for disclosure of communications,

---

[27] While confidentiality and privilege are distinct concepts, courts in Texas characterize the protection provided by the ADR Act as a "mediation privilege." *See, e.g.*, *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App. 2013).

records, or materials." Tex. Civ. Prac. & Rem. Code Ann. § 154.073; *see Gaskin v. Gaskin*, Civ. A. No. 06-039, 2006 WL 2507319, at *3 (Tex. App. Aug. 31, 2006); *see also Int. of G.L.W.*, Civ. A. No. 05-0327, 2024 WL 3755278, at *7 (Tex. App. Aug. 12, 2024) (listing exceptions).[28]

But under the New Jersey Uniform Mediation Act, even if a mediation communication were not otherwise admissible independent of the procedure, a proponent of the mediation communication could seek to admit such evidence by sufficiently showing (1) "the proponent of the evidence has shown that the evidence is not otherwise available," (2) "there is a need for the evidence that substantially outweighs the interest in protecting confidentiality, and" (3) "the mediation communication is sought or offered in . . . a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation." N.J. Stat. Ann. § 2A:23C-6.

Therefore, if the Court determines Texas law applies here, the Texas ADR Act would bar the attorney posturing and mediation communications evidence as such posturing and communications were "used in [and] made a part of an alternative dispute resolution." Tex. Civ. Prac. & Rem. Code Ann. § 154.073. However, if the Court determines New Jersey law applies here, ACE could seek to admit the evidence through the New Jersey Uniform Mediation Act's broader exception. N.J. Stat. Ann. § 2A:23C-6. Given this conflict between the Texas and New Jersey laws at issue, the Court must "determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 962 A.2d at 460).

To determine which state has the most significant relationship, New Jersey courts consider

---

[28] The key exceptions, which are inapplicable here, are as follows: (1) where a plaintiff sought to prove a new and independent tort, *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 800 (Tex. App. 2002), and (2) where the evidence was admissible or discoverable independent of the mediation process. *Chintam v. Chintam*, No. 05-22-00022-CV, 2023 WL 5345829, at *5 (Tex. App. Aug. 21, 2023).

the factors set forth in Restatement (Second) Conflict of Laws ("The Restatement") § 6 ("Section 6 Factors"). *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453 (2008) ("New Jersey . . . adheres to the method of analysis set forth in Restatement sections 6 and 145 [to determine choice-of-law]."); *see also Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993).[29] The factors are:

> a. the needs of the interstate and international systems;
> b. the relevant policies of the forum;
> c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> d. the protection of justified expectations;
> e. the basic policies underlying the particular field of law;
> f. the certainty, predictability and uniformity of result; and
> g. the ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws (1971) § 6.

Here, the Section 6 factors indicate Texas law should govern the issue of the mediation privilege. *See Camp Jaycee*, 962 A.2d at 463. The competing interests of the states and relevant mediation privilege law principles overlap in this case. Here, the basic policies underlying mediation privilege cut across both the New Jersey Uniform Mediation Act and the Texas ADR Act. Both laws seek to promote mediation and settlement by enabling candor. *See Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C.*, 71 A.3d 888, 895–96 (2013); *Chintam v. Chintam*, Civ. A. No. 22-022, 2023 WL 5345829 (Tex. App. Aug. 21, 2023). Both New Jersey and Texas seek to promote these goals by setting up protections for mediation communications with limited exceptions; however, as discussed above, Texas offers greater protection, meaning, unlike New

---

[29] It appears no New Jersey court has conducted a choice of law analysis as pertains to competing mediation privileges.

Jersey, Texas seeks to make it more difficult to pierce the veil that keeps mediation communications beyond what is admissible. *Smith*, 154 F.R.D. at 666–67.

As to the justified expectations of the parties factor, it follows that the parties who made the communications expected those communications would remain confidential under the law of that jurisdiction, here, Texas. (ECF No. 143 at 9 (addressing Mediator Karl Bayer)); *see, e.g.*, *Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 579 (S.D.N.Y. 2004). Further, since Texas is where the *Waterkeeper* Litigation was litigated, it is where the parties would most expect the law to apply. *Waterkeeper*, 2019 WL 2716544. Additionally, the interest of interstate comity also counsels towards applying Texas law as it still serves the policy underlying the New Jersey Uniform Mediation Act, while not undermining the heightened protections Texas intends parties to rely upon. In contrast, applying New Jersey law will frustrate Texas's far more protective mediation communication privilege. *See, e.g., Camp Jaycee*, 962 A.2d at 466. Given a majority of the Section 6 Factors indicate Texas law should govern, the Court need not delve into the judicial administration factor because it is of "lesser importance and must yield to a strong state interest implicated by the [other] factors." *Fu v. Fu*, 733 A.2d 1133, 1142 (N.J. 1999). For the foregoing reasons, Texas's mediation communication privilege applies here. Therefore, given Formosa has shown the mediation communications were offered as part of the mediation process and ACE has failed to identify the applicability of any exception to the mediation privilege, Formosa's Motion *in Limine* insofar as it seeks to exclude Trial Exhibits 187, 189, 212, and 160 is **GRANTED**. *See TCA Bldg. Co.*, 922 S.W.2d at 636.

### 5. Evidence Concerning the Reasonableness of Formosa's Settlement of the *Waterkeeper* Litigation (Fourth Motion)

Applying Texas law, Formosa first argues ACE should be precluded from offering evidence or arguing that the *Waterkeeper* Settlement was unreasonable because ACE "may not

40

challenge the reasonableness of a settlement if it engaged in the wrongful denial of coverage." (ECF No. 144-1 at 6 (quoting *Emps. Cas. Co. v. Block*, 744 S.W.2d 940, 942–43 (Tex. 1988).) Formosa also argues the reasonableness of the Consent Decree is not relevant and should otherwise be excluded because dangers of confusing the issues, misleading the jury, and wasting time outweigh any limited probative value. (*Id.* at 8.) Formosa argues that if ACE can raise arguments of reasonableness, it can only address whether the settlement amount was reasonable compared to Formosa's entire legal exposure. (*Id.* at 9 (citing *Pride Transp. v. Continental Cas. Co.*, 804 F. Supp. 2d. 520, 526 (N.D. Tex. 2011).)

ACE counters under Texas and New Jersey law, it can challenge the reasonableness of the *Waterkeeper* Settlement because it did not wrongfully deny coverage when it "agreed to provide [Formosa] with a defense subject to a reservation of rights." (ECF No. 155 at 4.) ACE also argues Texas law does not support Formosa's argument that the only possible issue as to the reasonableness of the settlement amount is whether it was reasonable when compared to the liability Formosa was facing. (*Id.* at 10.) Additionally, ACE argues the issue of the *Waterkeeper* Settlement's reasonableness is most relevant to ACE's position that Formosa fabricated the Consent Decree "to transform its non-covered liability . . . into potentially covered 'remediation costs.'" (*Id.*) Accordingly, ACE argues the probative value of this evidence is not substantially outweighed. (*Id.*)

In reply, Formosa points out that ACE seemingly agrees that under Texas law, if there is a finding it breached its duty to indemnify prior to settlement, it cannot attack the reasonableness of the settlement. (ECF No. 165 at 4.) Formosa contends ACE only argues it "had not wrongfully denied [coverage] *before* the Consent Decree and was defending under a reservation of rights." (*Id.* (emphasis added).) In other words, Formosa argues this evidence should be excluded because

it plans to show ACE did breach prior to the settlement date, which would, under Texas law, preclude an attack on the settlement based on reasonableness grounds. (*Id.* at 4–5.) As such, Formosa repeats that "only evidence on the reasonableness issue is evidence of the liability that was facing Formosa and evidence of the amount of settlement." (*Id.* at 3.)

The Court need not determine whether Texas or New Jersey law applies. It is the parties' obligation to sufficiently brief the issue, and ACE makes no effort to address the choice of law inquiry. (*See generally* ECF No. 155.) Instead, ACE merely states "[t]he standard under New Jersey law is even more insurer friendly." (*Id.* at 6 (arguing the New Jersey standard is higher because it also requires good faith).) Given ACE "relies heavily on [Texas] case law in opposing [Formosa's] motion," the Court reads ACE's Opposition to have conceded Texas law applies. *Sloan v. Urb. Title Servs., Inc.*, 689 F. Supp. 2d 94, 106 (D.D.C. 2010); *see Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("[T]he doctrine of waiver serves a functional purpose. By requiring litigants to identify and argue legal issues before the district courts, we ensure that we have a record to review on appeal. The same principles favor a rule that requires litigants to raise choice-of-law issues to the District Court.").

It is undisputed that under Texas law if an insurer wrongfully denies coverage *before* a settlement was entered into, the insurer may not challenge the reasonableness of the settlement. *See Emps. Cas. Co.*, 744 S.W.2d at 942–43; (*see also* ECF No. 165 at 4; ECF No. 155 at 5.) However, the parties disagree as to whether there was an impermissible pre-settlement denial of coverage. (ECF No. 144-1 at 7–8; ECF No. 155 at 4–5.) Under Texas law, when "an insurer properly reserves its rights to later deny coverage and the insured elects to pursue its own defense and ultimately settles the case, the insurer is bound to pay only damages up to the policy limits which (1) resulted from covered conduct, and (2) were reasonable and prudent." *Transp. Ins. Co.*

*v. Heiman*, No. 95-482, 1999 WL 239917, at \*5 (Tex. App. Apr. 26, 1999). According to ACE, it did not deny coverage when it agreed to provide a defense to Formosa in the *Waterkeeper* Litigation subject to a reservation of rights. (ECF No. 155 at 4–5.) But, according to Formosa, ACE had denied coverage because it had, among other things, "failed to act and effectively disclaimed any responsibility to defend Formosa in the *Waterkeeper* Litigation," and "did not have an interest in taking an active role in the *Waterkeeper* Litigation." (ECF No. 144-1 at 7 (internal quotations and citation omitted); *see also* ECF No. 165 at 4–5 ("The facts will demonstrate that ACE had taken a continuous no indemnity position from day one of the claim.").)

First, ACE is not precluded from challenging the reasonableness of the settlement because ACE provided coverage under a reservation of rights before the parties entered into the settlement. *See Emps. Cas. Co.*, 744 S.W.2d at 942–43; *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983) (noting a reservation of rights is proper action when insurer believes, in good faith, that complained-of conduct may not be covered under policy). Indeed, at oral argument, Formosa itself acknowledged ACE "had a duty to defend and . . . defended." (ECF No. 176 at 20.)

Second, the Court rejects Formosa's formulation of the operative reasonableness metric. That formulation—which measures reasonableness by looking only at the merits of the settled claim and the potential liability of its insured on that claim—is limited to claims brought pursuant to *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Com. App. 1929), which unlike the claims in this case, are claims against insurers for negligently failing to settle a claim within policy limits. Indeed, in *In re Farmers Texas Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267–68, 274 n.13 (Tex. 2021) (citing Jordan R. Plitt, et al., *Couch On Ins.* § 203:43 (3d ed. 2023)—a case where the Texas Supreme Court held that Stowers did not apply—the court embraced a number of factors to assess the reasonableness of settlement, including "any evidence of bad faith,

43

collusion, or fraud by the insured." Here, ACE seeks to introduce circumstantial evidence of Formosa's efforts to "transform its non-covered liability for penalties under the Clean Water Act into potentially covered 'remediation costs.'" (ECF No. 155 at 10.) That evidence aligns with the factors the Texas Supreme Court considered when evaluating the reasonableness of settlement. *In re Farmers Texas Cnty. Mut. Ins. Co.*, 621 S.W.3d at 267–68, 274 n.13. Accordingly, Formosa's motion seeking to exclude evidence concerning the reasonableness of Formosa's settlement of the *Waterkeeper* litigation is **DENIED**.

### B.      Plaintiff's Motions *in Limine*

ACE moves to exclude the following: Posner's expert testimony (ECF No. 135-1); Anderson's expert testimony (ECF No. 136-1); and documents withheld on the basis of privilege (ECF No. 137-1). Additionally, ACE asks the Court to take judicial notice of the following: documents from the *Waterkeeper* Litigation (ECF No. 138-1) and the existence of the Matagorda Bay Mitigation Trust website (ECF No. 140-1).[30]

### 1.      Jeffrey M. Posner's Expert Testimony (First Motion)

ACE first argues Posner's expert testimony should be excluded because testimony concerning alleged misconduct by ACE would not only prejudice ACE but also confuse and mislead the jury. (ECF No. 135-1 at 8–12.) ACE also points out Posner's report includes a legal conclusion the Court should exclude. (*Id.* at 11.) Additionally, ACE contends Posner's testimony concerning ACE's Reservation of Rights Letter ("ROR Letter") should be excluded because it would confuse and mislead the jury, prejudice ACE, and improperly speaks to ACE's state of mind. (*Id.* at 12–15.) Moreover, ACE argues Posner's testimony concerning ACE's intent that it

---

[30] According to ACE, the website is operated by the Trust established pursuant to the Consent Decree in the *Waterkeeper* Litigation. (ECF No. 140-1 at 2–3.)

was never going to provide indemnity coverage must be excluded because it impermissibly presupposes ACE's state of mind. (*Id.* at 16–18.)

In opposition, Formosa argues Posner should be permitted to testify regarding ACE's failure to engage in Formosa's defense because testimony on the customs and practices in the insurance industry will help the jury understand what an insurer and an insured are supposed to do during the defense of a case. (ECF No. 148 at 6–11.) Additionally, it appears Formosa counters ACE's argument seeking to exclude Posner's testimony concerning the ROR Letter merely by arguing, without citing any law, that ACE's arguments are meritless. (*Id.* at 11–13.) Formosa then argues Posner's opinion that ACE planned to deny coverage all along is not speculation about ACE's intent, motive, or state of mind but an opinion derived in part from Posner's experience in the insurance industry. (*Id.* at 13–14.)

In reply, ACE argues Posner's testimony concerning the customs and practices of the insurance industry should be excluded because Formosa's planned use of this evidence "effectively asks the jury to ignore the Policy's reporting and cooperation provisions," which ACE contends would both confuse the jury and prejudice ACE. (ECF No. 160 at 3–5.) As to Posner's testimony concerning ACE's ROR Letter, ACE points out Formosa offers "little, if any substance to rebut" ACE's argument seeking to exclude such evidence. (*Id.* at 6.) ACE also repeats that Posner impermissibly testifies as to ACE's intent motive, or state of mind. (*Id.*) Finally, ACE repeats its argument that Posner should not be permitted to testify that ACE was never going to provide indemnity coverage because such testimony is also impermissible testimony as to ACE's intent, motive, or state of mind. (*Id.* at 6–7.)

### a.   Posner's Testimony as to Custom and Practice

Posner's expert testimony will help the jury understand Formosa and ACE's respective duties. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002). While it is true the Policy's "language determines the insurer's duties," *In re Farmers Texas Cnty. Mut. Ins. Co.*, 604 S.W.3d 421, 427 (Tex. App. 2019), information regarding the customs and practices in the insurance industry may well help the jury understand how an insurer and an insured are supposed to act during the defense of a case. See *Flemming ex rel. Est. of Flemming v. Air Sunshine, Inc.*, 311 F.3d 282, 297 (3d Cir. 2002) (holding the district court did not abuse its discretion in refusing to exclude an expert's opinion on the custom and usage of the term "occurrence" in the insurance industry). However, the legal conclusions in Posner's report that ACE breached its duty to defend under the Policy are excluded and Posner may not testify about any such legal opinions. *See Berckeley Inv. Grp. Ltd. V. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

### b.   Posner's Testimony Concerning ACE's ROR Letter

Posner's testimony concerning ACE's ROR Letter would confuse the jury and should be excluded. ACE is chiefly (and correctly) concerned Posner's testimony distorts the Policy's reporting, cooperation, and consent-to-settle provisions because ACE's reservation of rights under the Policy in no way negates Formosa's duties pursuant to the Policy's reporting and cooperation provisions. (ECF No. 135-1 at 3–14.) Although Rule 403 carries with it a "presumption of admissibility," *United States v. Downing*, 753 F.2d 1224, 1230 (3d Cir. 1985), ACE has sufficiently shown that any probative value of Posner's testimony is substantially more prejudicial. *See* Fed. R. Evid. 403. Looking at the text of the ROR Letter and Posner's own deposition

46

testimony, the issuance of ACE's ROR Letter did not constitute a waiver of any right, remedy, or defense available to ACE. (ECF No. 85-5 at 129; ECF No. 135-3 at 37.) Allowing Posner to testify that the ROR Letter negates Formosa's duties would be highly prejudicial given its inaccuracy; therefore, any such testimony must be excluded.[31]

Accordingly, ACE's Motion *in Limine* seeking to exclude the expert testimony of Posner is **GRANTED IN PART** and **DENIED IN PART**. Specifically, as discussed above, the legal conclusions in Posner's report that ACE breached its duty to defend under the Policy are excluded, and Posner may not testify about any such legal opinions. *See supra* Section III.B.1.a. Additionally, Posner may not testify that ACE's ROR Letter constituted a waiver of any right, remedy, or defense available to ACE.

### 2. Rick M. Anderson's Expert Testimony (Second Motion)

ACE first argues that Anderson's expert testimony concerning Formosa's discharge of "trace" amounts of plastic pellets must be excluded. Specifically, ACE contends Anderson's testimony "amounts to nothing more than a lay opinion" because it is not "the product of reliable principles and methods" and does not "reflect his 'scientific technical, or other specialized knowledge' in the field of environmental compliance" (ECF No. 136-1 at 8, 11 (quoting Fed. R. Evid. 702)). ACE then argues Anderson's expert rebuttal testimony should be excluded because it merely rehashes the *Waterkeeper* Court's findings in the *Waterkeeper* Litigation and would mislead the jury and cause undue prejudice to ACE because it is factually and legally inaccurate (*id.* at 12–17).

---

[31] Because the Court excludes this evidence on Rule 403 grounds, it need not address ACE's alternative argument seeking to exclude Posner's testimony for impermissibly opining on ACE's state of mind.

In opposition, Formosa offers little, if anything at all, about whether Anderson's opinion stems from reliable principles and methods. (*See generally* ECF No. 149.) Instead, Formosa argues Anderson's opinion—that the TCEQ provided Formosa an unclear definition of the amount or volume of allowable plastics to be discharged and TCEQ failed to give Formosa any indication it had violated its permit—will assist the jury in evaluating whether Formosa knew the plastic discharges were violating the permit at the time. In other words, Formosa counters by making a relevance argument. (*Id.* at 10, 12.) Additionally, as to ACE's argument that Anderson's rebuttal testimony is merely a rehashing of Judge Hoyt's findings, Anderson argues Vaillancourt's fifth opinion is based on impermissible hearsay, such that Anderson should be permitted to rely on Judge Hoyt's findings. (*Id.* at 12–13.) Furthermore, ACE argues Anderson's rebuttal testimony would not mislead a jury. (*Id.* at 13–16.) ACE contends the focus of Anderson's testimony is not the factual error that Formosa points out, *i.e.*, whether the EPA or DOJ are natural-resource trustees, but rather the "scope and nature of the various regulatory rules and statutes involved in the *Waterkeeper*" Litigation. (*Id.* at 14.)

In reply, ACE makes the following arguments in support of excluding Anderson's expert testimony concerning Formosa's discharge of "trace" amounts of plastic: (1) Anderson's opinion as to what the TCEQ would consider a "trace" amount is not based on any "scientific technical, or other specialized knowledge" (ECF No. 161 at 4), (2) an expert witness cannot opine on a party's "intent, motive, or state of mind" (*id.* (quoting *Bracco Diagnostics, Inc.*, 627 F. Supp. 2d at 440)), (3) regardless of whether Anderson's testimony is needed to rebut ACE's reliance on the June 2010 EPA inspection of the Point Comfort Plant to establish the applicability of the Policy's exclusion provisions, Anderson's testimony is not based on a reliable method (*id.* at 4–5), and (4) it is no matter that Vaillancourt offered a rebuttal report to Anderson's expert opinions concerning

48

"trace" amounts of plastic discharges because unlike Vaillancourt, Anderson did not offer a sound opinion on the definition of "trace" and Vaillancourt's rebuttal opinion is not at issue (*id.* at 5).

Here, with respect to Anderson's expert testimony concerning Formosa's discharge of "trace" amounts of plastic pellets, the Court excludes such expert testimony because, as ACE correctly argues (ECF No. 136-1 at 12), Anderson "use[s] little, if any, methodology beyond his own intuition" to opine on what constitutes a "trace" amount of plastic. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) ("There is nothing here to submit to peer review, and it is impossible to ascertain any rate of error for [the expert's] assumptions . . . .[N]o standards control his analysis, and no 'gatekeeper' can assess the relationship of [the expert's] method to other methods known to be reliable . . . .") While Anderson is presumably qualified to opine on what constitutes a "trace" amount (ECF No. 136-1 at 9 ("Anderson has "worked at the . . . TCEQ . . . for 35 years.")), "the qualifications of the expert witness testifying based on the methodology" is but one factor when evaluating the reliability of an expert's methodology. *Paoli*, 35 F.3d at 742 n.8. In other words, Anderson's qualifications are not enough to admit his testimony insofar as it opines on what constitutes "trace" amounts of plastic, particularly given the lack of any underlying methodology. *Oddi*, 234 F.3d at 158. Indeed, Anderson's deposition testimony illustrates that his definition of "trace" was grounded in little more than intuition. (ECF No. 136-3 at 13 ("I don't believe I have a definition for 'trace.' I could use it in, you know, broad terms of some, but not a lot.").)

Moreover, in response to ACE's reliance on the June 2010 EPA inspection of the Point Comfort Plant to establish the applicability of the exclusion provisions, Formosa seeks to admit Anderson's testimony to show Formosa did not discharge more than a trace amount of pellets, to which ACE objects. (ECF No. 136-1 at 8.) Anderson's testimony concerning Formosa's operations

in 2010 is based merely on Anderson's viewing of photos. (ECF No. 136-3 at 12.) Under Rule 702's "fit" prong, this is not a reliable method to form an expert opinion concerning "trace" amounts. *See e.g.*, *Gonzalez-Lopez v. Perfect Trading, Inc.*, Civ. A. No. 21-12906, 2024 WL 1406563 (D.N.J. Apr. 2, 2024) ("[The expert's] opinion is based on his observation of the video footage and review of discovery from this case rather than from any scientific methodology. Therefore, it does not satisfy the precondition of providing a 'scientific connection' to the issue at bar.") In fact, at one point, Anderson even testified that he "d[id]n't believe that those photographs demonstrated compliance *or* noncompliance with . . . [Formosa's] permit." (ECF No. 136-3 at 12 (emphasis added).) Accordingly, Anderson's expert testimony concerning the "trace" amounts of plastic discharge is excluded on both reliability and fit grounds. *Schneider v. Fried*, 320 F.3d at 404 (listing the "trilogy of restrictions on expert testimony: qualification, reliability and fit").

As to Anderson's rebuttal testimony, the Court excludes such testimony to the extent it is merely parroting Judge Hoyt's findings. (ECF No. 136-1 at 13–14 (highlighting excerpts from Anderson's rebuttal report that merely repeat Judge Hoyt's findings).) As other courts in this and other districts have explained, opinions that simply rehash otherwise admissible evidence the jury is capable of understanding are not properly the subject of expert testimony because they are lay matters. *O'Bryant v. Johnson & Johnson*, Civ. A. No. 20-2361, 2022 WL 7670296, at *13 (D.N.J. Oct. 13, 2022); *see e.g.*, *Arevalo*, 2020 WL 3958505, at *21; *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2005) ("An expert may testify to a review of internal documents for the purpose of explaining the basis for his or her admissible opinions . . . [b]ut simply parroting [d]efendant's corporate documents or offering a narrative account of events from them will not be helpful to the jury."). This principle applies here, where Anderson does no

50

more than restate Judge Hoyt's findings. Accordingly, ACE's Motion *in Limine* seeking to exclude Anderson's expert testimony is **GRANTED**.

### 3.     Documents Withheld on the Basis of Privilege (Third Motion)

ACE asks the Court to bar Formosa from introducing documents withheld on the basis of privilege at trial. (*See* ECF No. 137-1 at 5–9); *see also Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co.*, Civ. A. No. 20-14338, 2023 WL 8446228, at *12 (D.N.J. June 8, 2023), *aff'd*, 2023 WL 6633852 (D.N.J. Oct. 12, 2023) (holding Formosa "has [not] put attorney-client protected information 'at issue'"). Essentially, ACE argues if Formosa is permitted to introduce withheld evidence at trial, it will face an incurable prejudice, which will disrupt proceedings. (*Id.*) In reply, Formosa reminds the Court "none of [the privileged documents] are on its Exhibit List attached to the Pre-Trial Order." (ECF No. 150 at 2.)

Reading Formosa's reply to mean it does not plan on introducing testimony or evidence previously withheld as privileged, the Court **RESERVES** judgment on ACE's third Motion *in Limine* and will "entertain objections to specific lines of questioning at trial." *Apotex, Inc. v. Cephalon, Inc.*, Civ. A. Nos. 06-2768, 10-5164, 09-3956, 09-3820, 2017 WL 2362400 (E.D. Pa. May 31, 2017).

### 4.     Judicial Notice of the *Waterkeeper* Litigation (Fourth Motion)

ACE asks the Court to take judicial notice of all pleadings, deposition testimony, trial testimony, and conclusions of fact and law from the *Waterkeeper* Litigation pursuant to Rule 201. (ECF No. 138-1 at 2–3.)

In its opposition, Formosa makes three arguments: (1) Formosa's request for judicial notice is overly broad and, regardless, the documents and testimony for which it seeks judicial notice largely irrelevant, (2) judicial notice cannot circumvent the rule against hearsay, and (3) judicial

notice does not permit this Court to accept Judge Hoyt's findings of fact and conclusions of law as truth of the matters asserted in the *Waterkeeper* Litigation. (ECF No. 151 at 6–10.)

In reply, ACE argues it need not "identify by page and line each and every statement that is the subject of [its] request" for judicial notice. (ECF No. 158 at 4–5.) In essence, ACE contends its request for judicial is not overly broad and in compliance with Rule 201(c). (*Id.*) Additionally, ACE contends the *Waterkeeper* Litigation documents and testimony for which it seeks judicial notice are relevant because they are vital to its defense against this coverage action. (*Id.* at 5–6.) As to Formosa's hearsay argument, ACE asserts it does not seek to introduce the deposition and trial testimony from the *Waterkeeper* Litigation to prove the truth for the matter asserted in the statement. (*Id.* at 6) Moreover, even if it did endeavor to do so, ACE contends the deposition and trial testimony are not hearsay pursuant to Rule 801(d) because Formosa's witnesses are available to testify at the trial of this proceeding and are subject to cross-examination and such testimony is an opposing party's statement. (*Id.*) And as to Formosa's argument that Judge Hoyt's findings of fact and conclusions of law are not the proper subject of judicial notice, while couched in adversarial language, ACE appears to concede that judicial notice of a prior case is appropriate insofar as it is merely notice of the existence of a prior court decision, finding of fact, conclusion of law, or filing. (*Id.* at 7.)

The Court declines to take judicial notice of "*all*" the pleadings, deposition testimony, trial testimony, and conclusions of fact and law from the *Waterkeeper* Litigation. (ECF No. 138-1 at 2 (emphasis added).) "As written, the requests place the onus on the Court to identify and decide *which particular facts* from the . . . court record will be judicially noticed. That is too broad . . . ." *Mulcahy v. New Chicago Indiana Town of*, Civ. A. No. 24-344, 2025 WL 2379696, at *6 (N.D. Ind. Aug. 15, 2025) (emphasis added). ACE's request does not provide the Court with the

52

"necessary information" required by Rule 201(c)(2). Accordingly, ACE's fourth Motion *in Limine* is **DENIED**.[32]

### 5. Judicial Notice of the Matagorda Bay Mitigation Trust Website (Fifth Motion)

ACE asks the Court to take judicial notice of the Matagorda Bay Mitigation Trust ("MBMT") website's mere existence. (ECF No. 140-1 at 2–3.)

In opposition, Formosa argues the Court should refuse to take judicial notice of the website because it is a non-government website that cannot be authenticated. (ECF No. 152 at 6–9.) Additionally, Formosa argues the Court should not admit evidence of the website because it is inadmissible hearsay, unauthenticated, and irrelevant. (*Id.* at 9–11.)

In reply, ACE notes "[f]ederal courts across the country" take judicial notice of factual information found on websites." (ECF No. 159 at 4 (collecting cases where courts have taking judicial notice of information from non-governmental websites).) Additionally, ACE affirms the authenticity of the website, pointing out that the website "was created pursuant to and operates under the auspices of the Consent Decree, which itself provides for creation of the" MBMT. (*Id.* at 5.) Moreover, ACE contends the website is relevant essentially because it was created pursuant to the Consent Decree. (*Id.* at 6.)

The Court declines to take judicial notice of the MBMT website.[33] *See Mininsohn Chiropractic & Acupuncture Ctr., LLC v. Horizon Blue Cross Blue Shield of New Jersey,* Civ. A. No. 23-1341, 2024 WL 4025957, at *9 (D.N.J. Aug. 30, 2024) (noting a non-governmental website

---

[32] Because the Court may take judicial notice "at any stage of the proceeding," Fed. R. Evid. 201, ACE is permitted to file a new motion *in limine* with greater specificity.

[33] Additionally, the Court need not address Formosa's hearsay objections as ACE filed a motion *in limine* seeking judicial notice, not to admit the website into evidence.

was not "deserv[ing] [of] judicial notice by the Court"). Simply put, because the MBMT website presents accuracy and authentication issues, judicial notice would be inappropriate. Accordingly, ACE's fifth Motion *in Limine* is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, Formosa's first motion *in limine* is **GRANTED**, its second motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**, its third motion *in limine* is **GRANTED**, its fourth motion *in limine* is **GRANTED**, and its fifth motion *in limine* is **DENIED**; ACE's first motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**, its second motion *in limine* is **GRANTED**, its fourth motion *in limine* is **DENIED**, and its fifth motion *in limine* is **DENIED**. Additionally, the Court **RESERVES** judgment on ACE's third motion *in limine*. An appropriate Order follows.

Date: March 18, 2026                               */s/ Brian R. Martinotti*
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**